UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

THOMAS B. GOLDENBERG                         CIVIL ACTION

VERSUS                                       NO. 13-291

CAROLYN W. COLVIN, COMMISSIONER             SECTION "F" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Thomas B. Goldenberg, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Act. 42 U.S.C. §§ 405(g), 423. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Goldenberg filed his application for DIB on October 1, 2010, alleging disability since August 28, 2010, due to heart disease. (Tr. 122-26, 170). After his application was denied at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 19, 2011. (Tr. 68-74). On November 12, 2011, the ALJ issued a decision denying plaintiff's application for benefits. (Tr. 17-25). Plaintiff submitted additional medical records and a post-hearing brief on the same date. The ALJ

reviewed the new materials and issued a revised and amended decision on January 6, 2012. The ALJ concluded that the new evidence does not change the outcome because it is duplicative or cumulative of the records already in evidence. She adopted and incorporated her November 12, 2011 decision into the revised decision and again denied benefits. (Tr. 10-11). After the Appeals Council denied review on December 21, 2012, the ALJ's revised and amended decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-4).

Plaintiff filed a timely memorandum of facts and law. Record Doc. No. 16. Defendant filed a timely reply memorandum. Record Doc. No. 17.

## II.    STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.    The ALJ failed to apply the proper legal standard when determining plaintiff's credibility.

B.    The ALJ failed to apply the correct legal standard when assessing plaintiff's residual functional capacity.

## III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.    Plaintiff has not engaged in substantial gainful activity since August 28, 2010, the alleged onset date.

2.    He has the following severe impairments:  ischemic heart disease, hypertensive vascular disease and spine disorders.

3.  His medically determinable impairment of anxiety does not cause more than a minimal limitation in his ability to perform basic mental work activities and is nonsevere.

4.  Goldenberg has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he may never climb ladders, ropes and scaffolds; is limited to occasional climbing of ramps and stairs; and must avoid concentrated exposure to extreme heat and cold and to hazards such as machinery and heights.

5.  Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the above residual functional capacity. His testimony is only partially credible because it is unsupported by his treatment notes to the degree he alleges, but is credible to the extent it is consistent with the above residual functional capacity.

6.  Goldenberg is capable of performing his past relevant work as a nurse anesthetist

7.   He has not been under a disability from August 28, 2010, through the date of the ALJ's revised and amended decision.

(Tr. 11, 19-20, 24-25).

IV.   ANALYSIS

A.   Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F.

3

App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

    The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir.

2008) (citing <u>Perez</u>, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  <u>Ray v. Barnhart</u>, 163 F. App'x 308, 311 (5th Cir. 2006) (citing <u>Perales</u>, 402 U.S. at 390); <u>Perez</u>, 415 F.3d at 461.

To be considered disabled and eligible for DIB, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2011).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]  <u>Id.</u> §§ 404.1520, 416.920;

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461.  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability:  "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d

123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

> B.     Factual Background

Goldenberg testified that he worked as a nurse anesthetist from September 1980

to September 2010 and that his disability began on August 28, 2010.  (Tr. 34-35).  He

explained that a fourth stent was placed in his heart on August 27, 2010 and that he went

to the East Jefferson Hospital emergency room that night after experiencing chest pain,

where he went into ventricular fibrillation and cardiac arrest.  (Tr. 35-36).  He stated that

he suffered a compression fracture in his back when his heart was defibrillated.

Plaintiff testified that he has been unable to work since August 28, 2010 because

of significant heart damage.  He stated that he had a six-vessel bypass in 1987.  He said

that he had cardiac catheterizations in 1992, 1998 and on August 25, 2010.  He explained

that he experienced chest pain while he was at work each of these times, so he believes

that his heart can no longer handle the stress of working.

Goldenberg stated that he sees Dr. Joseph Crapanzano, Jr., "on a regular basis" for

injections in his back because of the compression fracture in his spine.  He said he finds

it difficult to sit or stand for any length of time because of his back problems and he

cannot enjoy his prior recreational activities of water and snow skiing and offshore

fishing.  He testified that he goes fishing only in calm waters because any bumping or

7

jarring hurts his back.  (Tr. 36).  He stated that he tires easily and has to be careful about getting chest pain because five of the vessels that were bypassed have stents in them.  He said that only one of his vessels is completely open and that his cardiologist, Dr. Ben Jacobs, told him that he will probably need heart surgery again within a year.

Plaintiff testified that, on a typical day, he gets out of bed in the morning and does some household chores, such as washing clothes, doing a little cleaning and taking care of his dog, while his wife goes to work.  He said he volunteers every Monday morning at the World War II Museum, where he answers the telephone until noon.

As to the effects of his post-traumatic stress disorder, Goldenberg stated that he does not handle crowds well, even when the crowd consists of family members.  He said he sometimes withdraws when he is with a lot of people.  (Tr. 37).  He testified that symptoms of his post-traumatic stress disorder include that he does not like crowds, cannot bear to have anyone behind him, must be able to see the exits when he is out at a restaurant and has nightmares, which is his worst symptom.  He said he takes Ambien to try to prevent the nightmares. (Tr. 41).

Plaintiff stated that he can sit for about 30 minutes before he has to stand and walk around for 10 to 20 minutes.  He said that, when he sits, he feels like he has "a Charlie horse or something in my back.  Sometimes it feels like a shovel is in it."  He testified that he can stand for 30 minutes to an hour before he needs to take a 10 to 15 minute

break from standing.  (Tr. 38).  He said he could walk a couple of miles if he walked slowly, and then would need to rest for an hour or two.  (Tr. 38-39).  He stated that he can lift and carry 20 pounds.

When asked about side effects of his medications, Goldenberg testified that he has to be careful about cutting himself because he takes blood thinners.  He said he takes Tylenol with codeine to sleep, which makes him drowsy and constipated.  He stated that he tries not to take any pain medication other than Tylenol or Advil in the daytime because he does not want to become addicted to pain medications.  He said he takes either Tylenol with codeine or Vicodin, which Dr. Crapanzano prescribed, at night, but tries not to take Vicodin unless he really needs it.   (Tr. 39).  He stated that his back pain is constant.   He rated the pain on a typical day when he takes over-the-counter medication at six to eight on a scale of one to ten, with ten being the most pain.  He testified that the pain is most severe, with a rating of eight, between 4:00 and 8:00 p.m.

Plaintiff stated that he had a pacemaker implanted in July 2009.  He said he can make beds and mop floors on a typical day, but mopping sometimes hurts his back.  He testified that he cannot do yard work like he used to and has to be careful about picking up anything metal.  (Tr. 40).  He stated that he exercises at the French Riviera health club and uses some of the machines.  (Tr. 40-41).  He said he used to bench press a couple of

hundred pounds, but now cannot do a bench press at all because it hurts his back, and used to be able to do arm curls with 80 pounds, but can only curl 40 pounds now.

C.      Vocational Expert Testimony

A vocational expert, Dr. Crystal Younger, testified at the hearing that plaintiff's past relevant work as a nurse anesthetist is classified as light and highly skilled.  The ALJ posed a hypothetical of an individual with plaintiff's age, education and past relevant work experience who can perform light work, except that he may never climb ladders, ropes and scaffolds; can occasionally climb ramps and stairs; and must avoid concentrated exposure to extreme heat and cold and to hazards such as machinery and heights.  (Tr. 43).  Dr. Younger testified that such a person could perform plaintiff's past relevant work.

The ALJ asked the vocational expert to assume alternatively that the hypothetical person could not perform plaintiff's past relevant work.  Dr. Younger testified that such an individual has skills that are transferable to other light and sedentary work as a registered nurse.  (Tr. 44).

Excluding that alternative assumption, the ALJ posed a second hypothetical with the same parameters as the first one, with additional limitations that the person can sit for only one-half hour at a time before needing a break for 10 to 20 minutes, for an ability to sit for a total of three hours in an eight-hour work day; can stand and/or walk for four

hours total in an eight-hour day; can lift and carry a maximum of 10 pounds; and requires a one-hour rest period in addition to the usual work breaks in an eight-hour work day. Dr. Younger testified that such a person could not perform any work.  (Tr. 45).

      D.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence.  (Tr. 10, 21-24).  I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

      E.    <u>Plaintiff's Appeal</u>

          1.    <u>The ALJ applied the proper legal standard when determining plaintiff's credibility.</u>

Plaintiff bears the burden of proving that he suffers from a disability under the first four parts of the sequential inquiry.  <u>Perez</u>, 415 F.3d at 461.  Determining the credibility of his subjective evidence of pain and disability is a necessary part of the ALJ's consideration of the evidence. <u>Luckey</u>, 458 F. App'x at 326 (citing <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985)); <u>Perez</u>, 415 F.3d at 462.

Goldenberg argues that the ALJ failed to apply the proper legal standard when she found him only partially credible.  He contends that she made only a conclusory finding that his "statements concerning the intensity, persistence and limiting effects of his

symptoms are not credible to the extent they are inconsistent with the above residual functional capacity." (Tr. 24). Although plaintiff admits that the ALJ identified "some instances" in the medical records that support her credibility finding, he argues that she "failed to identify and deal with the more numerous instances in the medical evidence that supported claimant's credibility" and "did not follow the two-step analysis required" by Social Security Ruling 96-7p for evaluating his pain and other symptoms. Record Doc. No. 16 at p. 11. Specifically, Goldenberg contends that the ALJ failed to comply with the following provisions of Social Security Ruling 96-7p:

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>      . . . . It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). Goldenberg contends that because his own statements are supported by objective medical evidence, the ALJ must accept them and factor them into her analysis of his residual functional capacity.

Regarding the effect of 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p on an ALJ's credibility findings, the Fifth Circuit has held that the ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'" Spruill v. Astrue, 299 F. App'x 356, 358 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164). Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007). The ALJ's explanation of her reasons for finding plaintiff not entirely credible is all that is required. James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir. 2000) (citing Falco, 27 F.3d at 163); Godbolt v. Apfel, No. 98-1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999).

The ALJ in this case did not make a mere conclusory statement regarding plaintiff's credibility. She explained specifically why she found that Goldenberg's subjective symptoms and alleged limitations were not credible and were inconsistent with the evidence as a whole. The medical records are voluminous (although many of them

are duplicates) and plaintiff's severe impairments, which the ALJ recognized, are supported by objective testing and treatment notes.  However, the ALJ accurately noted that the medical evidence indicates that Goldenberg had only minimal cardiac findings after he had cardiac catheterization and stent placements in late August 2010; he receives good relief from his thoracic pain with trigger point injections; his post-traumatic stress disorder symptoms improved to the point that he receives consistent GAF scores of 70;[2] and he works out at a gym, performs household chores and volunteers at a museum. (Tr. 24).

The ALJ is not required to discuss every piece of evidence, particularly "when dealing with such an extensive and multi-faceted record."  Giles v. Astrue, 433 F. App'x 241, 251 (5th Cir. 2011) (citing Anderson v. Sullivan, 887 F.2d 630, 634 (5th Cir. 1989); Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)).  "The ALJ is not required to

---

[2]

A GAF score represents a clinician's judgment of an individual's overall level of functioning.  The reporting of overall functioning is done by using the GAF Scale, which is divided into ten ranges of functioning–e.g., 90 (absent or minimal symptoms) to 1 (persistent danger of severely hurting self or others, or unable to care for herself).  The GAF rating is within a particular decile if either the symptom severity or the level of functioning falls within the range.  Lower GAF scores signify more serious symptoms. George v. Barnhart, 458 F. Supp. 2d 314, 323 n.5 (S.D. Tex. 2006) (citing Amer. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV-TR")).  A GAF score in the 65 to 70 range indicates only mild functional difficulties.  Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264, at *4 (D. Me. June 24, 2004), report & recommendation adopted, 2004 WL 1770148 (D. Me. Aug. 4, 2004), aff'd, 129 F. App'x 633 (1st Cir. 2005) (citing Bartyzel v. Comm'r, 74 F. App'x 515, 520 (6th Cir. 2003); DSM-IV-TR at 34); Zurawski v. Halter, 245 F.3d 881, 884 (7th Cir. 2001).

mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." Clary v. Barnhart, 214 F. App'x 479, 482 (5th Cir. 2007) (citing Falco, 27 F.3d at 163). The ALJ is required only to review the entire record, resolve conflicts in the evidence and state specific reasons for her credibility findings, supported by the evidence. Luckey, 458 F. App'x at 324; Giles, 433 F. App'x at 249 (citing SSR 96-7p); Newton, 209 F.3d at 452.   The ALJ complied with these requirements in the instant case.

The ALJ accorded great weight to the opinions of Miljana Mandich, M.D., who examined Goldenberg on December 10, 2010.  Based on a review of plaintiff's treatment records and a physical examination, Dr. Mandich diagnosed severe multi-vessel coronary artery disease, hypertension, dyslipidemia[3] and post-traumatic stress disorder.  Despite these diagnoses, Dr. Mandich's physical examination revealed normal findings in all of plaintiff's systems, except that he had limited extension of his thoracolumbar spine and pain in one spot above the thoracolumbar junction. (Tr. 682-88). Dr. Mandich's findings are consistent with Goldenberg's treatment records as a whole.

The ALJ also accorded great weight to the opinions of Anthony Scardino, M.D., who reviewed the medical records and completed a physical residual functional capacity

---

[3]Abnormal concentrations of lipids or lipoproteins, such as triglycerides and cholesterol, in the blood. MedlinePlus Medical Dictionary, http://www.merriam-webster.com/medlineplus/dyslipidemia (visited Jan. 23, 2014).

assessment on January 19, 2011.  Dr. Scardino found that Goldenberg is capable of the exertional demands of light work, with the limitations on climbing and environmental and hazard exposures that the ALJ adopted.  (Tr. 53-55).  Dr. Scardino's opinions are consistent with Dr. Mandich's findings.

Finally, the ALJ gave great weight to the opinions of Judith Wood, Ph.D., who reviewed plaintiff's mental health medical records and opined on January 27, 2010 that Goldenberg has an anxiety-related disorder, but only mild restrictions in his activities of daily living and his ability to maintain concentration, persistence and pace; no difficulties in social functioning; and no repeated episodes of decompensation of extended duration. Dr. Wood therefore found that plaintiff's mental limitations are not severe.  (Tr. 62-63). These three medical opinions and the ALJ's credibility findings, based in large part on these opinions, are substantially consistent with the entirety of Goldenberg's medical records.  Plaintiff's subjective complaints may be discounted when the alleged symptoms are not consistent with the objective medical evidence.  Brown v. Astrue, 344 F. App'x 16, 21 (5th Cir. 2009); Hernandez v. Astrue, 278 F. App'x 333, 340 (5th Cir. 2008) (citing Anthony, 954 F.2d at 295); Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995).

In addition, a medical condition that can reasonably be remedied by surgery, treatment or medication is not disabling.  Muckelroy v. Astrue, 277 F. App'x 510, 511-12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir.

16

1988), abrogated on other grounds by Sullivan v. Zebley, 493 U.S. 521, 527 (1990));

Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864

F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3

(5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987); Acosta v. Astrue,

865 F. Supp. 2d 767, 790 (W.D. Tex. 2012); Quintanilla v. Astrue, 619 F. Supp. 2d 306,

321 (S.D. Tex. June 27, 2008); see also Thibodeaux v. Astrue, 324 F. App'x 440, 443-44

(5th Cir. 2009) (plaintiff's allegations that his depression was disabling was not credible

when his treating psychiatrist "recommended that he begin a job search" and evidence

indicated that "medication had been very effective in treating his insomnia"); Bolton v.

Apfel, 237 F.3d 632, 2000 WL 1701816, at *1 (5th Cir. Nov. 3, 2000) (affirming denial

of benefits when, "[a]lthough the medical records reflect that Bolton did experience a

single episode of severe depression, her depression responded to treatment and had

apparently resolved by the time Bolton was examined by [a particular doctor].").

A claimant's lack of need for prescription medication is also a relevant factor to

consider in determining the severity of an alleged impairment and may be used in

conjunction with the medical reports to discount plaintiff's complaints of disabling pain

or other limitations.  Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Anthony

v. Sullivan, 954 F.2d 289,  295 (5th Cir. 1992); Griego v. Sullivan, 940 F.2d 942, 945

(5th Cir. 1991); Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).

In addition to the specific reasons given by the ALJ for discounting Goldenberg's credibility, the record contains other examples of inconsistencies between his testimony and the medical evidence.  He testified that Dr. Jacobs told him he would need another heart surgery.  My review of the records reveals nothing to support that statement.  The medical records indicate that plaintiff's cardiac condition is stable and that he has been doing well since implantation of the stents in August 2010.  (Tr. 392, 407-08, 541, 662, 669-70, 703-04, 837-38, 854-56, 873-75).  Plaintiff does not regularly take strong medication for his back pain, but manages the pain for the most part with over the counter medications and occasional trigger point injections that are highly effective in relieving his pain.  (Tr. 505, 674, 723-26, 796, 798, 802, 867-69).  The medical records of his therapy for post-traumatic stress disorder reveal that he made considerable progress toward his treatment goals, he manages his stress with coping skills and he generally has fewer symptoms, especially since he stopped drinking alcohol.  He has routinely refused any prescription medications for symptoms of post-traumatic stress disorder, except for Ambien to help him sleep.  He consistently reported that he sleeps well and has little anxiety or depression since he stopped drinking.  (Tr. 549-52, 685, 766-68, 774, 777-78, 796-98, 807, 813, 875, 881).

"The ALJ found the medical evidence more persuasive than the claimant's own testimony.  These are precisely the kinds of determinations that the ALJ is best

positioned to make." <u>Falco</u>, 27 F.3d at 164. "The ALJ properly considered the record as a whole, including the available medical evidence and the nature and extent of the plaintiff's daily activities, in determining that the plaintiff's subjective complaints were not fully credible." <u>Hoelck v. Astrue</u>, 261 F. App'x 683, 686 (5th Cir. 2008) (citing <u>Hollis v. Bowen</u>, 837 F.2d 1378, 1384-85 (5th Cir. 1988); <u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995)).

The ALJ cited 20 C.F.R. § 404.1529 and Social Security Ruling 97-p in her opinion and followed those procedures. The ALJ's credibility findings in this case are substantially supported by the record. Accordingly, this assignment of error lacks merit.

> 2.    The ALJ applied the correct legal standard when assessing <u>plaintiff's residual functional capacity.</u>

The ALJ found at the fourth step of the sequential evaluation that Goldenberg has the residual functional capacity to perform light work, except that he may never climb ladders, ropes and scaffolds; is limited to occasional climbing of ramps and stairs; and must avoid concentrated exposure to extreme heat and cold and to hazards such as machinery and heights. Goldenberg argues that the ALJ failed to incorporate additional limitations that he claims are supported by the medical evidence, his reports to medical providers and his credible testimony at the administrative hearing. He contends that these additional limitations limit him to less than the full range of sedentary work, which

would substantially change the vocational expert's opinion and result in a finding that he is disabled.

First, as discussed in the preceding section, the ALJ found plaintiff's testimony and other subjective complaints only partially credible, and that finding is supported by substantial evidence. The ALJ already incorporated into her residual functional capacity assessment all of the functional limitations that she found credible. Thus, Goldenberg's testimony is insufficient to establish any additional limitations.

Second, plaintiff's mere listing of the numerous diagnoses, Record Doc. No. 16 at p. 14, that are reflected in his medical records does not establish additional functional limitations. The mere diagnosis of an impairment, even if it is a severe impairment under Social Security regulations, does not establish a claimant's disability. Bordelon v. Astrue, 281 F. App'x 418, 421 (5th Cir. 2008) (citing Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983)); McLendon v. Barnhart, 184 F. App'x 430, 431(5th Cir. 2006); Harris v. Barnhart, No. 02-55540, 2003 WL 21054733, at *2 (9th Cir. 2003); Estok v. Apfel, 152 F.3d 636, 640 (7th Cir. 1998); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991); Arroyo v. Sec'y of Health & Human Servs., 932 F.2d 82, 87-88 (1st Cir. 1991); Martin v. Chater, No. 95 C 0245, 1995 WL 505955, at *6 (N.D. Ill. Aug. 23, 1995) (citing Anderson v. Sullivan, 925 F.2d 220, 222 (7th Cir. 1991)).

Similarly, "[w]hile pain can be disabling, it is not an automatic ground for entitlement to disability benefits. Pain is recognized as a disabling condition under the Act only where it is constant, unremitting, and wholly unresponsive to therapeutic treatment. The test for disability under the Act is not satisfied merely because Plaintiff cannot work without some pain or discomfort." Alvarez v. Colvin, No. 3:12-CV-03569-BK, 2013 WL 1858197, at *7 (N.D. Tex. May 3, 2013) (citing Hames, 707 F.2d at 166); accord Nugent v. Astrue, 278 F. App'x 423, 427 (5th Cir. 2008) (citing Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985)); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005)).

Thus, Goldenberg "'must show that [he] was so functionally impaired by [his diagnosed impairments] that [he] was precluded from engaging in any substantial gainful activity.'" Bordelon, 281 F. App'x at 421 (quoting Hames, 707 F.2d at 165); accord Anthony v. Sullivan, 954 F.2d 289, 293 (5th Cir. 1992); Hamauei v. Astrue, No. 10-85, 2011 WL 802398, at *7 (E.D. La. Feb. 28, 2011) (quoting Hames, 707 F.2d at 165).

Goldenberg's allegations that he suffers severe pain from the compression fracture in his back are not substantially supported by the medical evidence. Subjective complaints of pain or other symptoms must be corroborated by objective medical evidence, Quijas v. Astrue, 298 F. App'x 391, 393 (5th Cir. 2008) (citing Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001)), and such complaints may be discounted

21

when the alleged symptoms are not consistent with the objective medical evidence. <u>Brown</u>, 344 F. App'x at 21; <u>Hernandez</u>, 278 F. App'x at 340; <u>Dunbar v. Barnhart</u>, 330 F.3d 670, 672 (5th Cir. 2003).

Although Goldenberg is treated by Dr. Crapanzano for back pain, the only back symptoms that Dr. Mandich found were limited extension of plaintiff's thoracolumbar spine and pain in one spot above the thoracolumbar junction.  Goldenberg otherwise had a normal range of motion in his back, ambulated and got on and off the examining table without difficulty, had normal gait and station, could walk on heels and toes, and could squat and rise without support.  Straight leg raising test was negative bilaterally.  He had no physical or neurological abnormalities in any extremity, except diminished deep tendon reflexes in his right arm, which he had for many years before his alleged onset date.  He had normal appearance, size and range of motion in all joints and normal muscle bulk, strength and tone in his extremities.  (Tr. 685-87).  Neither Dr. Mandich in her consultative examination nor Dr. Crapanzano in his treatment records assessed any functional limitations based on plaintiff's back pain.

In the instant case, the ALJ's review of the voluminous medical records was thorough and accurate.  The medical records to which she accorded great weight, which are consistent with plaintiff's treatment records as a whole, substantially support her residual functional capacity findings.

22

Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ applied the correct legal standard when determining when determining plaintiff's credibility and when assessing his residual functional capacity.  Her findings regarding these issues are supported by substantial evidence.

**<u>RECOMMENDATION</u>**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[4]

New Orleans, Louisiana, this ____24th____ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[4]Douglass referred to the previously applicable ten-day period for the filing of objections.  Effective
December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.